Frank D. GRAHAM, Judith Futerfas, William A. Graham, Robert N. Graham, Frank Hardy, Steve Konahison, and Betty Kittleson, Appellants,

v.

CITY OF LAKEWOOD VILLAGE, Texas, a General Law Municipality, Appellee.

No. 2–89–276–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 5, 1990.

Robert E. Hager, Sallinger, Nichols, Jackson, Kirk & Dillard, Dallas, for appellants.

Ronald H. Clark, Henderson Bryant & Wolfe, Sherman, for appellee.

Before FARRIS, DAY and ASHWORTH, JJ. (Retired, sitting by Assignment).

## OPINION

ASHWORTH, Justice.

Appellants, plaintiffs below, appeal a judgment rendered after a non-jury trial which held they were responsible for monthly charges imposed by a municipality on their vacant lots because of the availability of water service.

We reverse and remand.

Beginning in 1969, Lakewood Village Subdivision was developed by Lakewood Village Development Company. Appellants are the successors of such company. Lakewood Village Development Company constructed a water and sewer system to service the lots in two of the three phases of the subdivision and by deed restrictions required that each home receive such service. Each lot in the two phases has a water meter box and sewer connection tap. In 1977, the City of Lakewood Village was incorporated as a Type B General Law City. In November, 1988, the city voted to purchase the water and sewer system, and in March, 1989, adopted an ordinance setting the sum of $25 per month as a minimum fee for water service and established a "standby fee" of $25 per month for all vacant lots that have water and sewer service immediately available. The ordinance provided that if a residential homestead exists on a lot and the owner owns additional contiguous vacant lots, then up to three of such additional vacant lots may be exempted from such fees. Such ordinance set the connection fee at $250 while it previously had been $1800.

Appellants, as owners of approximately fifty-eight vacant lots, brought suit seeking a declaratory judgment that such ordinance is unconstitutional and an injunction against its enforcement.

■ Appellants' first point of error contends the trial court erred in declaring the $25 fee against a non-user is a legal fee, not an illegal tax, within the meaning of TEX.LOCAL GOV'T CODE ANN. § 51.032 and §§ 402.001 et seq. (Vernon 1988 and Supp.1990).

The trial court filed extensive findings of fact and conclusions of law. Appellants' first point is directed toward conclusion of law number six which states the standby fee in question is not an illegal tax, but rather a fee enacted as part of a utility rate ordinance. At the request of appellants, the trial court filed an additional conclusion of law number one which states the standby fee is a fee for the use of the water and sewer system of the city. We must consider these two conclusions together in order to rule on appellants' first point of error.

The key issue in this appeal is whether the city has the authority to charge a monthly fee to the owners of vacant lots because of the availability of water and sewer service as distinguished from water furnished or use of sewer services.

We examine the pertinent sections of the Texas Local Government Code for guidance in determining the issue and emphasize language which we consider to distinguish between availability and use. Section 402.001 provides that a municipality may purchase, construct, or operate utility systems and regulate the same. Lines of the system may be extended outside the city; water, sewer, gas, or electric service may be added to persons outside the city. Section 402.002 provides a municipality may buy, own, construct inside or outside the city limits, and maintain and operate utilities and receive compensation for *services furnished. The City may make or purchase utilities and sell them* to the public. Section 402.0025 provides for the *collection of charges for utility services furnished.* Section 402.002 provides for payment of annual sums by the city to a school district to compensate for taxes lost if the city takes over an existing public utility. Section 402.011 empowers a city owning its own water system to condemn private property to bring water into the city. Section 402.012 provides that cities located in a water district or which have a contract with a water district for untreated water may acquire or construct water treatment facilities and transportation systems, issue bonds, *impose charges for use of the facilities* and levy taxes for payment of the bonds and operation and maintenance of the facilities. Section 402.013 applies to cities of more than 1000 that own and operate a water system. Such cities are empowered to acquire interests in property by eminent domain if necessary, to *furnish adequate and wholesome water* supplies.

Section 402.014 provides a city may contract with a water district or non-profit corporation for the acquisition of public utilities facilities. If the city is to assume ownership of the facilities when all debts owing for its construction are paid, the city may make payments to the district or corporation for services to part or all residents of the city. The city may pledge revenues from the utilities or levy taxes, or a combination of such sources, in order to make the payments necessary to acquire the facilities. Section 402.015 provides a Type A general-law city may provide a municipal water supply system. Section 402.016 provides such water system may not be sold or leased without approval of the city's qualified voters. Section 402.017 provides a home-rule city may exercise the exclusive right to own, construct, and operate a water system. The municipality may regulate the system and prescribe rates for the *water furnished.* The city may acquire such land as is necessary for construction. The city may take such actions necessary to operate and maintain the system and to require water customers to pay charges for *water furnished.* The city may create from water revenues a separate fund dedicated solely to the water system. Such fund may be pledged to the payment of principal and interest on bonds issued for water system purposes. Section 402.018 provides that a city which owns its own water system may contract with a non-profit corporation for raw or treated water. The city shall set its rates and charges to *users of the municipal water system* at a level sufficient to pay the maintenance and operating expenses of the system. Section 402.019 provides that a city may contract for water with a water improvement district or a water control and improvement district. *Water supplied shall be paid for from water system revenues.* The district may not demand payment from tax revenue. Section 402.020 provides a city may contract for water with a water district. *The rates for water sold* or services rendered by the district are subject to revision in order to permit the district to pay its expenses and the principal and interest on its bonds. Section 402.021 applies to cities with populations of more than 900,000 and provides such cities may contract with a conservation and reclamation district for water and water services and facilities. Section 402.022 provides a city may contract with a "special district" for the transportation and disposal of sewage. In part, the section provides that *the contract may*

*provide for standby service.* Payments by the city shall be made from revenues of its water system or sanitary sewer system, or both. The city may pledge its taxing power if authorized by the voters. A city that has contracted under this section shall periodically adjust rates charged to *users* to pay expenses of operation, maintenance, and bond obligations. Section 402.023 provides for contracts between cities and the Trinity River Authority for sewage disposal services. The contract may provide for *standby service.* Payments by the city shall be made from revenues from the city's water system, sanitary sewer system, or both. The city may pledge its taxing power if authorized by the voters. The city shall set and adjust rates charged to *users* in order to provide revenue to pay its obligations under the contract. Section 51.032 of the Texas Local Government Code provides for general powers of a city and does not aid in determining the issue before us.

TEX.WATER CODE ANN. § 54.011 (Vernon 1972) provides that a municipal utility district may be created. TEX.WATER CODE ANN. § 54.204 (Vernon Supp. 1990) provides a district may adopt and enforce all necessary charges, fees, or rentals, in addition to taxes, for providing any district facility or service. Further, that a deposit may be required for any service or facility furnished. The district may discontinue a facility or service to prevent abuse or enforce payment of an unpaid charge, fee, or rental, or taxes which have been due for more than six months.

In construing the sections cited, we presume they were intended to be consistent and to operate in harmony. *Credit Exchange of Dallas, Inc. v. Bell,* 427 S.W.2d 674, 676 (Tex.Civ.App.—Dallas 1968, no writ). Further, we presume the legislature has used words in the sections in the sense in which they are ordinarily understood. *Calvert v. Austin Laundry & Dry Cleaning Co.,* 365 S.W.2d 232, 235 (Tex.Civ.App.—Austin 1963, writ ref'd n.r.e.).

We find no reported Texas cases answering the key issue presented. However, a clue to construction is contained in the penalty provision for non-payment of charges or fees. In a case such as the one at hand, how is the city to enforce payment? It is obvious that the facility, the water line, cannot be discontinued—it is equally obvious that removal or other discontinuation of the meter box will be of no effect in enforcing payment by the owner of a vacant lot receiving no water.

In examining the sections reviewed above, it appears that the revenues contemplated to be received by cities from their water system will be from water furnished to the users as distinguished from the system used to furnish the water. In those instances where the sections refer to "standby service," such reference concerns the furnishing of sewer services. Construing these statutes in light of the circumstances present in the instant case, we hold the facility or service furnished contemplated the furnishing of water—not the immediate availability of water service. We find, however, that while the sections contemplate revenue from water furnished, such finding is not determinative of the issue.

We turn to case law for precedent. We have been cited no Texas cases exactly on point, nor have we found any. *City of Texarkana v. Wiggins,* 151 Tex. 100, 246 S.W.2d 622 (1952) is an often-cited case with regard to discrimination in utility rates. While not directly on point in the instant issue, the case is of value in assessing the merits of appellants' contentions. In *Texarkana* the water system of a privately owned utility corporation was taken over by the city. When acquired, the city left in effect the rates which had been in effect and which were the same for residents and non-residents. About two years after acquisition, the city adopted rates for non-residents which were one and one-half times that of residents for water and double that of residents for sewer service. In a five-to-four opinion, the court held that when a city decides to extend its services outside its limits, it has the right to fix the service charges as the situation requires; if a higher rate is required for non-residents the city may exact the higher rate. *Id.* at 627. However, once the rate status is fixed, the city cannot thereafter arbitrarily change rates to discriminate against non-residents. The court then held the Texar-

kana ordinance void unless some reasonable basis could be shown for the difference in the rates.

Appellant cites the case of *Smith v. Township of Norton*, 2 Mich.App. 17, 138 N.W.2d 522 (Mich.Ct.App.1965). This case was a class action for the return of charges made by the township pursuant to an ordinance which provided that residential or business buildings on lots adjacent to water mains or sewers shall be connected to such mains or sewers; that any building not so connected shall be charged the readiness to serve charge and the debt currently in effect on the mains involved. It was stipulated that the available facilities, although not hooked up, added to the value of the property. Prior to enacting the ordinance, the township supervisor sent out a notice advising residents that no assessment would be made against persons not using the service except one user for fire hydrant protection. In setting rates, the ordinance contained no charge to non-users of water. The question presented in *Smith* was: does the Revenue Bond Act authorize the township to charge "debt service charges" or "ready to serve charges" to persons who abut the water lines but are not hooked up to the lines? The statutes of Michigan providing for the acquisition, operations, maintenance, and financing of public utilities are discussed—such statutes are generally the same as those of the State of Texas as previously outlined. The court in *Smith* held that townships are limited in making charges for services, facilities, and commodities furnished to the "users" of said system, there being no provision in said act for charging "non-users."

While there are some distinguishing factors, we find the facts in *Smith* essentially the same as in the instant case. In finding of fact number ten, the trial court found that the value of appellants' lots received substantial economic benefit from immediate access to water and sewer service and that such lots have higher values than similar lots without a water and sewer service immediately available. In this case of a non-user, Lakewood Village receives benefits from the water and sewer system through property taxes incident to the in-creased valuation of the lots involved. As noted earlier, the trial court made an additional conclusion of law that the standby fee is a fee for the use of the water and sewer system of the city. We disagree. While the water and sewer system is available, there is no use of the same by owners of the vacant lots adjacent thereto and who are not hooked up to the same.

We find the charge of $25 per month to owners of vacant lots adjacent to the water and sewer system, but not hooked on to the same, constitutes an illegal tax to such owners. Appellants' first point of error is sustained.

Appellants' second point of error contends the charge is an unauthorized special assessment. The third point of error contends the charge is an impact fee. The fourth point of error contends such charge violates constitutional due process. Appellants' fifth point of error asserts the agenda for the meeting at which the ordinance in question was adopted was not properly posted. In view of our treatment of appellants' first point of error, we find it is not necessary to address such points.

Appellants' sixth point of error argues that the trial court abused its discretion in awarding appellee attorney's fees. As a fact finding, the trial court found $6,900 a reasonable fee for necessary attorney's services actually provided; $5,000 for an appeal to the court of appeals; $2,500 if writ of error is sought; and $2,500 if writ of error is granted. There was no conclusion of law with regard to attorney's fees, nor is there any complaint to the lack of such conclusion. The judgment provided for attorney's fees as above set forth.

Appellants argue there is no proper pleading to support the award of attorney's fees to appellees. On August 7, 1989, the trial court entered an order permitting appellee to file "Defendant's First Amended Answer." Such answer contains a plea for attorney's fees. Appellants' contention with regard to no pleading supporting the award of attorney's fees is without merit. In this declaratory judgment case, the award of attorney's fees is within the dis-

cretion of the trial court. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). In view of our treatment of appellant's first point of error we find this cause should be remanded to the trial court for review of its judgment with regard to attorney's fees. Appellants' sixth point of error is sustained.

The judgment of the trial court that plaintiffs take *nothing* is reversed and this cause is remanded to the trial court for entry of judgment in accordance with this opinion and review of the trial court's judgment with regard to attorney's fees.